UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

ELENA NOVIKOVA,

                Plaintiff,

    -against-

                    **REPORT AND RECOMMENDATION**
                    04 CV 5324 (DLI) (LB)

IRS; MR. G. FIELDS, DIRECTOR; MS. HALL,
CASE WORKER; MS. MORALES, PUBLIC
ADVOCATE; BANK OF NEW YORK;
MERRILL LYNCH; TD WATERHOUSE;
COMMERCE BANK; INDEPENDENCE BANK;
WASHINGTON MUTUAL; LEOPOLD KAPLAN,

                Defendants.
----------------------------------------X

**BLOOM, United States Magistrate Judge:**

## INTRODUCTION

On December 8, 2004, plaintiff, Elena Novikova, filed this *pro se* action alleging 1) that she was wrongfully terminated by defendant Bank of New York ("BNY"); 2) that BNY and other financial institutions misappropriated or mismanaged her money; 3) that the Internal Revenue Service ("the IRS") wrongfully insisted that she pay taxes on money she alleges was stolen from her by these financial institutions; and 4) that her privately retained counsel provided ineffective assistance by, *inter alia*, failing to resolve her problems with the IRS.[1]

---

[1] Together with her complaint, plaintiff filed a motion for a preliminary injunction and a temporary restraining order seeking to enjoin a levy on her assets filed by the IRS. Plaintiff's request was denied by Order dated December 9, 2004, docket entry 5, and plaintiff's motion for reconsideration was denied on July 17, 2007. Docket entry 126.

By Order dated June 21, 2005, the Honorable Frederic Block dismissed plaintiff's employment discrimination claim against BNY and plaintiff's claims against the IRS and its employees (defendants Fields, Hall and Morales).[2] However, plaintiff's claim that BNY, Merrill Lynch, TD Waterhouse, Commerce Bank, Independence Bank and Washington Mutual (hereinafter the "bank defendants") conspired to mismanage and/or misappropriate her money was permitted to proceed. These defendants have now moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).[3] This case was reassigned to the Honorable Dora L. Irizarry who referred these motions to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). Because the Court is without subject matter jurisdiction, it is respectfully recommended that this action should be dismissed.

## BACKGROUND

The instant complaint arises from events that transpired in 1999, when plaintiff was terminated by her longtime employer, BNY. Although plaintiff has not provided details surrounding her termination, she alleges that she "lost [her] job because of prejudice, hate and [her] age," Complaint at 10 (emphasis omitted). She also implies that she was sexually harassed and discriminated against based on her religion by someone at BNY who "wanted sex from

---

[2] Plaintiff's former state-court attorney, defendant Leopold Kaplan, has never appeared in this action.

[3] A motion to dismiss can be converted to a motion for summary judgment pursuant to Fed. R. Civ. P. 56 provided the non-moving party has been given the requisite notice. Vital v. Interfaith Medical Center, 168 F.3d 615 (2d Cir. 1999); McPherson v. Coombe, 174 F.3d 276, 284 (2d Cir. 1999). Here, even though plaintiff had previously responded to defendants' motions, the Court issued plaintiff the requisite notice pursuant to Local Civil Rule 56.2. Plaintiff submitted supplemental responses to defendants' motions on July 2, 2007 and July 13, 2007 (docket entries 123, 124).

[her]" and "wanted [her] to be a Catholic." Id.

Plaintiff filed an employment discrimination complaint against BNY with the New York City Commission on Human Rights ("CHR"). The parties reached a settlement of the CHR claim memorialized by a Conciliation Agreement dated June 29, 1999. A copy of that agreement is attached to plaintiff's December 19, 2004 submission,[4] and provided that plaintiff would receive a lump sum payment of $50,000, "less applicable deductions"; a retirement benefit, which could be paid as a lump sum of approximately $33,109; accrued vacation pay of $1,404, less applicable deductions; and approximately 1,600 shares of BNY stock. See December 19 submission, Ex.1 at 1 "Conciliation Agreement". Tax records reflect that BNY paid plaintiff $50,000 in "non-employee compensation." Plaintiff alleges that the agreement was unenforceable. Complaint at 11-12. Specifically, plaintiff asserts that she was forced to sign the agreement by a "law inforsment[5] officer of the CHR" and Mr. Kirschner, a representative of BNY; that BNY breached the agreement; and that "the case has to be reopen, according to the CHR decision." Complaint at 12. However, as CHR had not actually reopened plaintiff's case, Judge Block dismissed plaintiff's employment discrimination claim against BNY because plaintiff lacked a "right to sue" letter and because the Conciliation Agreement entered in 1999 would preclude plaintiff's claim. See June 21, 2005 Order.

Plaintiff alleges that the bank defendants filed improper tax forms with the IRS,

---

[4] Plaintiff filed an eight-page document dated December 19, 2004 (hereinafter, the "December 19 submission") described on the docket sheet as an "amended complaint." However, the December 19 submission is better characterized as a supplemental pleading, as it amplifies the allegations in the complaint and attaches financial and legal documents purportedly substantiating plaintiff's claims. The Court will consider both plaintiff's original complaint and the December 19 supplement herein.

[5] The Court omits the use of "sic" when quoting from plaintiff's submissions.

3

incorrectly reporting that plaintiff had incurred tax liability as a result of the settlement. Plaintiff, (who alleges that the bank defendants stole her money), implies that these tax forms prompted the IRS to miscalculate her tax liability. After plaintiff refused to pay the taxes calculated by the IRS, defendant Hall, the IRS case manager who was assigned to plaintiff's case, "put a levy on [plaintiff's] acctount" leaving her without funds and causing her to be evicted. Complaint at 5 (emphasis omitted). Plaintiff also alleges that Hall falsely accused plaintiff of threatening her, causing unidentified men to visit plaintiff and threaten her with arrest. Judge Block dismissed all of plaintiff's IRS related allegations, finding that plaintiff had not alleged that she had made full payment of the taxes in dispute or filed a refund claim, a prerequisite to a refund suit pursuant to 28 U.S.C. § 1346(a). Moreover, Judge Block found no reckless or negligent disregard of the IRS code and that plaintiff's allegations failed under the Anti-Injunction Act, 26 U.S.C. § 7421. See June 21, 2005 Order.

Plaintiff's remaining allegations against the bank defendants are that these financial institutions all misappropriated or mismanaged the assets which plaintiff had accumulated during her tenure at BNY. The alleged incompetence and/or dishonesty began with BNY: "[a]ll of this comes from BNY. They hire people, who does the dirty job for them controlling my life, mail, stealing from me . . . from my accounts stolen much more than a million dollars . . ." Complaint at 5. Plaintiff also alleges that BNY and others have poisoned and tortured her:[6]

---

[6] Plaintiff attaches a Psychiatric Evaluation Report by Greg Lacchini, M.D. dated June 1, 2005 as an exhibit to her opposition papers, (exhibit IX). Docket entry 124. Dr. Lacchini reports that plaintiff is "also upset because Bank of NY has hired 'some scum of the earth to break in to my apartment and to steal Bank of NY paperwork.' She goes on to say that Bank of NY and several other banks are stealing stock and bond money [from her]. The cl. goes on to explain a very complex web of deception in which three banks and a few financial institutions are involved in stealing her money. I ask her to show me some written proof of stealing from her and she says that she had all the proof she needs–but does not show me anything substantial." Dr. Lacchini diagnoses plaintiff with a Psychotic Disorder NOS; Delusional Disorder; Major Depressive Disorder, Single Episode, Severe With Psychotic Features and with a Paranoid Personality Disorder.

4

> I fight for my money and benefits, I was tortured, I think. I had radiation too. Now they tempering with my tap water. A few times taking a shower go rushed all over my body. A few times drink the water, had a revolution in my stomach. No body in the building has it. If I take water from my neighbors, everything is all right . . For 4 ½ months I was living on the street, at Penn Station, because they ruined my record I couldn't rent an apartment. For obeying law, paying rent, fixing the apartment with my own money, was illegally evicted.[7]

Complaint at 9. (Emphasis omitted).

Plaintiff's complaint contains numerous incomprehensible and many unsubstantiated allegations. For example, plaintiff alleges that BNY and defendant Merrill Lynch, with whom plaintiff opened a brokerage account in August 1999, "sold" assets from plaintiff's IRA account without her permission:

> My profit sharing with BNY was in 2 accounts #901256 and 21287. Bank of New York report acct #154002. I never had and I can prove it. No one of the investment firms uses my TIN #9238. To cover up the fraud IRS doesn't know it's the social security payment or pension and Bank of New York and Merrill Lynch sold my IRA acct. without my permission or knowledge. BNY-105.947 sent me R-1099, []. The other part sold Merrill Lynch for the same account, and I have the R-1099. Took the money and IRS harassing me, to pay them taxes.

Complaint at 12. (Emphasis omitted).

Plaintiff alleges that Merrill Lynch also stole her money:

> On August 1, 99 I gave a Merrill Lynch broker, . . . a check for 50 T dol. And to transfer all my assets from BNY and Leumi Bank my mutual funds. I trusted him. He gave me 2 blank from to sign and I did, not even looking at it. I couldn't imagine that such thieves works on wall street. The statements from August and September I never received. Statement for October I had, but they stole it. . . Discovering it, I took my money out in 1999, but till now they stealing my money, using SS# & name. . . I do receive death threats.

Complaint at 13-15. (Emphasis omitted).

---

[7] Plaintiff's allegations regarding an "illegal" eviction are repeated throughout the complaint and in the supporting documents. The Court has told plaintiff that landlord-tenant matters cannot be heard in this Court. See Docket entries 24, 98, 106, 127. However, plaintiff persists: "first of all it's the right forum. If the wall street mafia wouldn't steal my life savings I would have money to pay rent and live a good life." Docket entry 130 at 5.

Plaintiff alleges that defendant TD Waterhouse understated the assets which plaintiff transferred to it, improperly held the assets in an IRA account, and understated the value of her shares (Complaint at 15-17); that defendant Commerce Bank, from whom she bought Certificates of Deposit ("CDs"), somehow defrauded her (Complaint at 19); and that defendants Independence Bank and Washington Mutual (formally "Dime") miscalculated the amount of interest due on her CDs and made errors on tax forms relating to her accounts. In addition, plaintiff accuses these institutions of "stealing" various documents, checks and other things from her, including the keys to her safe deposit box, one of which was on her key ring. (Complaint at 21-23).

Finally, plaintiff names her former attorney, Leopold Kaplan, as a defendant in this action. Kaplan represented plaintiff in a suit against many of the same defendants that raised similar allegations of financial impropriety in New York State Supreme Court. Plaintiff alleges that Kaplan and Justice Vaughan, the judge assigned to the state court action, conspired to dismiss her case:

> Judge Vaughn and Mr. Kaplan made a deal and Judge Vaughn
> kicked out of the court a law suite that never was filed, in
> October, never informed me, kept Mr. Kaplan on my case till
> January 14, 04. . . . Is Judge Vaughn guilty? Of course not. He
> has to maintain a lavish lifestyle of living. He can do what ever it
> takes to do it. He's the law. And where was Mr. Kaplan?
> Making deals, paying bribes, and taking bribes in Brooklyn
> Housing Court.

Complaint at 26. Plaintiff accuses Kaplan of malpractice and of defrauding her of her $7500

retainer fee.[8] Kaplan has never appeared in this action.

## PROCEDURAL BACKGROUND

In February 2002, plaintiff hired Kaplan to resolve her problems with the IRS and to initiate an Article 78 action relating to her "unlawfull discharge from a job." Complaint at 23-24. Although plaintiff's complaint alleges that Kaplan never brought a lawsuit on her behalf, id. at 24, the December 19 submission attaches a copy of the state court complaint prepared by Kaplan that names BNY, Merrill Lynch, TD Waterhouse and Dime Savings Bank (a predecessor of Washington Mutual) as defendants. Justice Vaughn, who presided over plaintiff's state court case, dismissed plaintiff's allegations against Bank of New York on the merits[9] and dismissed defendants TD Waterhouse and Merrill Lynch, ordering these parties to arbitration.[10]

Apparently, after defendants BNY, Merrill Lynch and Waterhouse were dismissed, plaintiff abandoned the state court action: "Judge Vaughn reliced BNY from the case on the pretend of the fraudulent agreement, that in court of law is a piece of garbage, ordered

---

[8] Plaintiff also alleges that Kaplan represented her in a Housing Court action without her permission and took bribes to work against her interests. She also contends that Housing Court Judge Liebovitz appointed a guardian – Mr. E. Wilson, who is not a party to this action – to represent her, but that Wilson, perhaps acting in concert with Kaplan, agreed to have her evicted. However, plaintiff denies that a guardian ad litem was ever appointed to represent her. Docket entry 126 at 2.

[9] The Court takes judicial notice of state court proceedings. See World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc., 424 F. Supp. 2d 484, 508, fn16 (S.D.N.Y. 2006) (citing to Green v. Warden, U.S. Penitentiary, 699 F.2d 364, 369 (7th Cir.1983) ("[F]ederal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue")).

[10] See Bank of New York, Notice of Motion, Exhibit A; Merrill Lynch, Notice of Motion, Exhibit 5; TD Waterhouse, Notice of Motion, Exhibit D.

7

arbitration to the other, and I didn't know anything. Bank of New York had all the answers. I worked there. Till now they stealing my money." Complaint at 25-26. Plaintiff's Opposition to Waterhouse's Motion to Dismiss explains her objection to Justice Vaughn's decision to compel arbitration: "[o]n June 4, 2004, I rented a new apartment and because all furniture was destroyed, a lot of things stolen or ruined, and to create a normality in a new place, I needed money. That where my troubles started. That's why I am objecting to arbitration." Id.

On October 8, 2003, after a period of inactivity due to plaintiff's failure to prosecute, the state court, *sua sponte*, marked the case as "disposed" on its docket. See Affidavit of Daniel Rubel for defendants Independence Bank, Washington Mutual Bank and Dime, Exhibit C. In 2004, plaintiff filed the instant *pro se* action in federal court.

## DISCUSSION

Federal subject matter jurisdiction exists when a federal question is presented to the Court or the plaintiff and all of the defendants are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing to Fed.R.Civ.P. 12(b)(1)). "It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction. Unlike failure of personal jurisdiction, failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte. If subject matter jurisdiction is lacking, the action must be dismissed." Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697,

700-01(2d Cir. 2000) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)).

"[B]efore deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction." Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir. 2001) (citations omitted). In Franceskin v. Credit Suisse, 214 F.3d 253 (2d Cir. 2000), the Second Circuit, in reversing the district court stated: "[w]hat the present case and most of those cited above have in common is the waste of litigants' and court resources that could have been avoided by the parties or court examining the pleadings and taking the simple steps of establishing . . . jurisdiction or dismissing for lack of it." Id. at 256. Similarly, in Wynn, the Second Circuit stated that "[i]t is unfortunate, to say the least, that the parties have litigated this case for years only to learn that they are in the wrong forum. That result only emphasizes the need for parties and the district courts to take a hard look at jurisdictional issues early in the litigation". Id. at 159.

All of bank defendants have moved to dismiss the complaint. However, only Washington Mutual and Sovereign[11] jointly move to dismiss based on lack of subject matter jurisdiction.[12] See Memorandum of Law in Support of Defendants Washington Mutual Bank and Sovereign Banks' Joint Motion to Dismiss at 7. These defendants maintain that there is no basis for diversity jurisdiction (28 U.S.C. § 1332) or federal question jurisdiction (28 U.S.C. §

---

[11] Independence Bank merged with Sovereign Bank Corp., Inc. in June 2006. Washington Mutual and Sovereign Banks' Memorandum of Law at 1, fn. 1.

[12] As this Court is recommending that this action be dismissed for lack of subject matter jurisdiction, it will not and cannot consider defendants' alternate bases for dismissal. However, the Court notes that defendants have raised a number of viable defenses, including *res judicata* and the Rooker-Feldman doctrine.

1331). Id. at 7-8. Plaintiff's opposition to defendants' motion that the Court lacks subject matter jurisdiction states that "[h]e calls me a 'subject' that doesn't have personal jurisdiction. What name he should be called–a swindee, who fabricates statements." Document 126 at 2. Plaintiff's opposition raises for the first time that jurisdiction is premised on identify theft "a federal crime 18 U.S.C. § 1028" and under "ERISA". Document 123 at 2.

"The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transport. System, Inc., 426 F.3d 635, 638 (2d Cir. 2002) (internal quotations and citations omitted). However, the Court is mindful that because plaintiff is proceeding pro se, her submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 9 (1980). Indeed, courts should "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " Lehman v. Discovery Communications Inc., 217 F. Supp. 2d 342, 346 (E.D.N.Y. 2002) (quoting McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). The Court is duty bound to assess the basis for its jurisdiction and will liberally construe plaintiff's submissions.[13]

### 1. Diversity Jurisdiction

Plaintiff's complaint alleges causes of action that include conversion, negligence and/or

---

[13] A district court, in resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), may refer to evidence outside the pleadings. Lyndonville Sav. Bank, 211 F.3d at 700-01 (citing to Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).

gross negligence, breach of fiduciary duty, fraud and breach of contract.[14] All of these claims arise under state law. Nay v. Merrill Lynch, No. 05 Civ. 10264 (RMB), 2006 WL 2109467 (S.D.N.Y. July 26, 2006) (dismissing fraud action arising under New York law in an action by guardian alleging a "systematic looting" of ward's bank accounts); Tevdorachvili v. Chase Manhattan Bank, 103 F. Supp. 2d 632 (E.D.N.Y. 2000) (finding that depositor's action against bank alleging breach of contract, breach of fiduciary duty, conversion and negligence were causes of action arising under state law). Thus, subject matter jurisdiction over these claims only exists if plaintiff can establish diversity of citizenship. See e.g. Franceskin, 214 F. 3d at 256 (reversing the district court and finding a lack of subject matter jurisdiction in an action where a former depositor sued bank asserting claims for breach of contract, conversion and negligence).

Diversity jurisdiction exists where there is a suit between citizens of different states, and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332; Lehman, 217 F. Supp. 2d at 347 (citing Advani Enters., Inc. v. Underwriters at Lloyds, 140 F.3d 157, 160 (2d Cir. 1998). In order to establish diversity, "there must be complete diversity of citizenship which means that no plaintiff is a citizen of the same state as any defendant." Id. (citing to Herrick Co., Inc. v. SCS Communications, Inc., 251 F.3d 315, 322 (2d Cir. 2001) (finding it axiomatic that "diversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships")). Defendants Washington Mutual and Sovereign Bank argue that diversity is defeated as plaintiff as well as defendants Leopold Kaplan, Merrill Lynch and Bank of New York are all citizens of New York.

---

[14] The Court offers no opinion on the viability of any of plaintiff's claims, especially in light of plaintiff's abandonment of her state court action.

11

Plaintiff is domiciled in New York and is thus is a citizen of New York. See Tevdorachvili, 103 F. Supp. 2d at 636 (inquiry into diversity jurisdiction focuses on the parties' domicile). Defendant Bank of New York is a bank chartered by the State of New York with its principal place of business in New York and therefore it is considered a citizen of New York. See United Missouri Bank of Kansas City v. Bank of New York, 723 F. Supp. 408, 409 (W.D. Mo. 1989) (establishing that the Bank of New York is a citizen of New York). As plaintiff and defendant Bank of New York are citizens of New York, there is no basis for diversity jurisdiction. Wachovia Bank v. Schmidt, 546 U.S. 303 (2006) ("corporations ordinarily rank as citizens only of States in which they are incorporated or maintain their principal place of business, and are not deemed citizens of every State in which they maintain a business establishment").[15]

## 2. Federal Question Jurisdiction

Federal question jurisdiction exists when an action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A federal question claim should only be dismissed for lack of subject matter jurisdiction if it is "'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" Lehman, 217 F. Supp. 2d at 347 (quoting Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666 (1974). "'[T]he cause of action [must be] so patently without merit . . . as to justify . . . the court's dismissal for want of jurisdiction.'" Id. (quoting Hagans v. Lavine, 415 U.S. 528, 542 (1974)). If the federal claim is colorable, a court properly assumes subject

---

[15] As the absence of complete diversity leaves this court without subject matter jurisdiction, the Court need not assess the citizenship of the other defendants.

matter jurisdiction over the lawsuit. Id. (citing to Savoie v. Merchants Bank, 84 F.3d 52, 57 (2d Cir. 1996)).

Plaintiff may be alleging that federal subject matter jurisdiction is conferred upon the Court "automatically" because banks are federally chartered institutions subject to federal regulation. However, this supposition is incorrect. "[I]t is well settled that the 'mere fact that an entity is federally chartered , [] is not sufficient to establish federal question jurisdiction.'" Johnson v. Washington Mutual Bank, 03-CV-4704 (DLI); 2006 U.S. Dist. LEXIS 26729 at fn.1 (E.D.N.Y. 2006) (quoting Curiale v. Reissman, 798 F. Supp. 141, 145 (S.D.N.Y. 1992) (dismissing plaintiff's claims that his mortgage closing was a conspiracy and a fraud and that escrow charges were dishonest and excessive), aff'd 216 Fed. Appx. 64, 2007 U.S. App. LEXIS 2553 (2d Cir. 2007); see also Resolution Trust Corp. v. Gregor, 872 F. Supp. 1140 (E.D.N.Y. 1994) (also quoting Curiale for the proposition that jurisdiction is not conferred simply because an institution is federally chartered).

Plaintiff's opposition raises for the first time that jurisdiction is proper under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. See e.g. Docket entry 130. Although generally the Court will not consider claims raised for the first time in opposition, see e.g. Malaco Leaf, AB v. Promotion in Motion, Inc., 287 F. Supp. 2d 355, 375-76 (S.D.N.Y. 2003) (court refused to consider claims proffered for the first time on summary judgment), the Court considers and rejects plaintiff's invocation of ERISA as a basis for federal question jurisdiction. Concerned with employee pension plan abuses and mismanagement, Congress enacted ERISA in 1974 "to promote the interests of employees and their beneficiaries in employee benefit plans." Aetna Life Ins. Co. v Borges, 869 F.2d 142, 144 (2d Cir. 1989) (citation

omitted); see also 29 U.S.C. §§ 1001, 1001a, 1001b). ERISA subjects employee benefit plan administrators and the benefit plans to participation, funding and vesting requirements as well as rules regarding reporting, disclosure and fiduciary responsibility. See Shaw v Delta Air Lines, Inc., 463 U.S. 85, 90-91 (1983) (citing to 29 U.S.C. § 1021 *et seq.*). In order to protect participants and beneficiaries of employee plans, ERISA works as a uniform national law that governs both the benefit plans and the processing of claims and disbursement of benefits. New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co., 514 U.S. 645, 656-657 (1995).

However, plaintiff's instant claims do not arise out of any interest she may have had in an employee benefit plan under ERISA. Plaintiff was never a participant or beneficiary of an employee benefit plan of any defendant named herein except for BNY. See *infra* at 3. Plaintiff apparently received a pension payout as part of the 1999 Conciliation agreement with BNY. Id. Any ERISA claim that plaintiff could have raised against BNY was not made. This Circuit requires exhaustion of administrative review procedures as a prerequisite to any suit to recover ERISA benefits. See Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 511 (2d Cir. 2002); Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993). Plaintiff's conclusory assertion that jurisdiction arises under ERISA because all the defendant banks allegedly stole her **retirement** savings is simply insufficient to establish a basis for federal question jurisdiction. That plaintiff placed her savings in Individual Retirement Accounts (IRAs) with defendants does not convert her generalized fraud and theft claims into an ERISA claim.

Plaintiff's other claim of federal question jurisdiction, her desire to prosecute the

defendants under federal criminal statutes for identity theft, also fails. Plaintiff's recent filing argues that "my case according the existing law should be filed as criminal but for unknown reason filed as civil. Identity theft is a Fed. Crime 18 U.S.C. 1028." Docket entry 130 at 1. Plaintiff cannot commence a *pro se* criminal case as "a private citizen cannot initiate a federal criminal action." Connecticut Action Now, Inc. v. Roberts Plating Co., 457 F.2d 81, 86-87 (2d Cir. 1972)).

To the extent that plaintiff is attempting to recast her state court action into one involving a constitutional question, this too must fail. In Johnson v. Chemical Bank, No. 96 CIV. 4246 (SS); 1996 WL 706893 (S.D.N.Y. December 9, 1996), a *pro se* plaintiff sued under 42 U.S.C. §§ 1983 and 1985, alleging that defendants had violated his civil rights by placing an "illegal" restraint on his bank accounts. The Court found that the banks' actions did not arise under federal law:

> Plaintiff has failed, however, to establish that he was deprived of any constitutionally or federally protected right by the defendants. Where, as here, a complaint's constitutional claim appears to be nothing more than a state court claim "recloaked in constitutional garb," the constitutional claims are insufficient to confer jurisdiction. Anderson v. Bowen, 881 F.2d 1, 5 n.10 (2d Cir. 1989) (quoting Hagans v. Lavine, 415 U.S. 528, 536-37 (1974)). Moreover, because "most rights secured by the Constitution are protected only against infringement by government[] [actors]," the unsupported references to various constitutional amendments are insufficient to state a claim against private parties. Flagg Bros. v. Brooks, 436 U.S. 149, 156 (1978).

The Court has afforded plaintiff's complaint and supplement a very thorough review. There is no basis for federal question jurisdiction presented.[16]

---

[16] Plaintiff has submitted evidence demonstrating her lack of funds and her resulting periodic homelessness. The Court believes that plaintiff is sincere in her effort to use the legal system to right a perceived wrong. However, plaintiff's sincerity and circumstances do not provide a basis for jurisdiction in federal court.

## CONCLUSION

Accordingly, as the Court lacks subject matter jurisdiction, this action should be dismissed under Federal Rules of Civil Procedure 12 (b)(1) and 12 (h)(3).

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital District Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
Lois Bloom
United States Magistrate Judge

Dated: September 11, 2007
Brooklyn, New York